This case was originally filed in the Madison County Circuit Court by the Bank of Huntsville (hereinafter "Bank") as an interpleader and declaratory judgment action. The Bank sought a determination of the ownership of funds in a certificate of deposit (CD) denominated "Mr. Oscar F. Underwood as Custodian for Irene Underwood." The Bank's pleadings named as defendants Oscar F. Underwood III, executor of the Underwood estate, and Mrs. Irene Underwood. The trial court determined that Mrs. Underwood was entitled to the funds in the CD, and Mr. Underwood, for the estate, appeals.
On October 18, 1977, Oscar F. Underwood went to the Bank and deposited $40,000 into a CD made payable to "Mr. Oscar F. Underwood as Custodian for Irene Underwood." Irene Underwood, the wife of Oscar F. Underwood, did not see this CD until after Mr. Underwood's death, but she did testify that he had told her of its existence and that it was made in her name.[1] *Page 620 
From November 1979 until March 1983, the funds of the CD were pledged as collateral for a series of five loans from the Bank. Some of these loans were to Mr. Underwood or to his son (Oscar F. Underwood III) and daughter-in-law. Mrs. Irene Underwood was unaware that the CD's funds had been pledged as collateral for any of the loans. After Mr. Underwood's death, the Bank filed a claim against his estate for the unpaid balance of the loans that were in default. When the parties could not reach an agreement on the distribution of the funds, the Bank filed the instant interpleader and declaratory judgment action.
The trial court, without a jury, heard evidence presented ore tenus and entered a judgment declaring that Mrs. Underwood was entitled to the funds of the CD. As the basis for its judgment, the trial court concluded: (1) The word "custodian" has a meaning connoting the holding of property for the benefit of another, and therefore, Mr. Underwood was not the owner of the funds at the time of his death; (2) The pledging of the CD's fund as collateral for the loans violated Mr. Underwood's fiduciary duty as a "custodian" and was improper; (3) Under the "passive trust doctrine," title to the funds of the CD vested in Mrs. Underwood immediately upon the deposit of the funds, since the trustee ("custodian") had no duties imposed upon him; (4) A trust was created by the terms of the deposit and there was no provision by which it could be revoked by the settlor; and, (5) The Bank had notice of the trust nature of the CD, and therefore could not have properly extended credit to Mr. Underwood upon the belief that he owned the CD's funds.
Although the appellant, Mr. Oscar Underwood III, for the estate, has presented several issues for review, his main contention is that the trial court erred in not finding that a "tentative" trust had been created by Mr. Underwood's actions in creating the certificate of deposit. The "tentative" trust advocated by the appellant is more commonly referred to as a "Totten trust" after the leading case that adopted this form of a trust. In re Totten, 179 N.Y. 112, 71 N.E. 748 (1904). In reviewing its past decisions, the Totten court realized that there was a conflict in a number of its cases on how to deal with a deposit of money into an account in the form of "depositor, in trust for beneficiary."[2] In order to end the conflict and confusion in this area of the law, the Totten
court set forth the following rule of law:
 "A deposit by one person of his own money in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the passbook or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor."
179 N.Y. at 125-26, 71 N.E. at 752.
Since its recognition by New York in 1904, the concept of the "Totten trust" has been adopted in at least 18 jurisdictions. See, Estes, In Search of a Less Tentative Totten, 5 Pepperdine L.Rev. 21, 26 n. 21 (1977). However, the concept has not been adopted in Alabama and apparently has not been addressed by this Court since the Totten opinion was released. There is, however, one case in Alabama decided prior to the Totten
decision that has addressed a similar problem, and we find it to be dispositive of the appellant's contention.
In Sayre v. Weil, 94 Ala. 466, 10 So. 546 (1891), the defendant Weil maintained an account in a "banking house" which *Page 621 
contained the sum of $1,038.42. The account, which was entitled "D. Weil, trustee for the Goldman children," had been opened by the defendant with his own money, and the defendant had deposited money into the account over a period of several years. In July 1891, the defendant and the "banking house" reached an agreement to apply the funds in this account to a pre-existing debt owed by the defendant to the "banking house." The debt was then assigned to the plaintiff, who attempted to collect the funds in the account in payment of the debt. With respect to the creation of a trust under these circumstances, i.e., a deposit of money into a bank account, this Court stated:
 "If by language clear and unmistakable, whatever may be the form of expression, a trust is created, as distinguished from a mere intention to create, if nothing remains to be done to perfect the trust, although there is no valuable consideration, courts of equity will uphold and enforce the trust, in the interest of the beneficiary."
94 Ala. at 470-71, 10 So. at 547.
To determine whether a trust had been created, the Court reviewed the opinions from a number of jurisdictions on the same subject. 94 Ala. at 471-74, 10 So. at 548. The Court decided that a majority of the opinions discussed had reached the conclusion that a "deposit in trust" had been created by the depositor's actions and that the trust was irrevocable. Specifically, the Court said: "Under all the authorities, we hold that the trust was completed and irrevocable, and that nothing remained in the trustee but a mere naked legal title."94 Ala. at 474, 10 So. at 548.
In this case, the trial court found that the facts clearly imply "that a trust was contemplated." This Court has said that for a trust to exist it is essential that the legal title be in one person and the beneficial ownership be in another person.Birmingham Trust Savings Co. v. Marx, 230 Ala. 68, 73,159 So. 483, 487 (1935). By the actions taken by Oscar Underwood, legal title to the funds was vested in him and beneficial ownership of the funds was vested in Irene Underwood. The fact that he did not give the certificate of deposit to Irene Underwood, and the fact that he withdrew the interest from the account, did not prevent the creation of a trust or destroy the trust that was created. See, 89 C.J.S. Trust § 54, at 811-12 (1955). And since the settlor of the trust, Oscar Underwood did not expressly reserve a power of revocation, the trust he created was irrevocable. See generally, G. Bogert, The Law ofTrusts and Trustees, § 998, at 273 (rev. 2d ed. 1983). See also, Sayre v. Weil, supra.
Having considered the appellant's contention that this Court should adopt the "Totten trust" concept, we decline to take such a step, but instead reaffirm the longstanding rule set forth in Sayre v. Weil, supra. This finding of an irrevocable trust is in complete agreement with the trial court's judgment that Irene Underwood was entitled to the funds of the certificate of deposit. This Court will sustain a trial court's judgment on appeal if any good ground is presented, whether or not that ground was stated in the judgment. See, Dougherty v.Hovater, 425 So.2d 1082, 1084 (Ala. 1983). See also, Tucker v.Nichols, 431 So.2d 1263, 1265 (Ala. 1983).
Because we have determined that an irrevocable trust was created by Oscar Underwood's actions, we find it unnecessary to address the other issues presented by the appellant. Therefore, the judgment of the trial court is due to be affirmed.
AFFIRMED.
MADDOX, BEATTY, HOUSTON and STEAGALL, JJ., concur.
JONES, ALMON, SHORES and ADAMS, JJ., dissent.
[1] The appellant contends that the trial court incorrectly relied on this testimony in its final judgment, since, he says, its introduction was prohibited by the "Dead Man's Statute," Code 1975, § 12-21-163. The appellant contends that he seasonably interposed an objection to this testimony. However, the record reveals that Mrs. Underwood did testify to this information in one portion of her testimony without an objection being made by the appellant. Thus, the alleged error was waived when no objection was made. See, Smith v. Haynes,364 So.2d 1168, 1170 (Ala. 1978). See also, Akers v. Hamm,446 So.2d 630, 631 (Ala.Civ.App. 1984).
[2] This term is taken from Estes, In Search of a Less TentativeTotten, 5 Pepperdine L.Rev. 21, 22 (1977).