MADDOX, Justice.
This is an appeal by the defendant, Bevie Ann Polhemus, from the judgment of the trial court holding that the plaintiffs, Joe Cobb and other residents of an unrecorded subdivision known as Fowler Farms, are entitled to an easement by implication across her property. We agree with the findings of the trial court and affirm its judgment, but we remand the case in order that the trial court may clearly define the scope of the easement by metes and bounds.
The parties, with one exception, are residents of a subdivision created by James *966 Fowler (hereinafter known as Fowler Farms); they all own lots either on or near the shores of Lake Walter F. George, known more commonly as Lake Eufaula. Both the lake itself and the immediate land (up to the flood zone) around it are owned by the United States Government and are controlled by the United States Army Corps of Engineers. James Fowler, the subdivision’s original creator, obtained a permit from the Corps of Engineers to construct and maintain a boat ramp upon the Government-owned land. Access to this boat ramp is obtained by crossing two lots (lots number 9 and number 19), which are owned by the defendant, Polhe-mus. She purchased these lots in 1992 from William G. Fowler, who had acquired them in 1982 after James Fowler’s death; James Fowler and William Fowler each secured a permit to operate the boat ramp during their respective periods of ownership.
Before the defendant purchased the lots in 1992, and unknown to her at the time, several residents of the Fowler Farms subdivision wrote a letter to William Fowler. The residents stated that they had purchased their lots with the understanding that they would have permanent access to the boat ramp, and they threatened legal action if Fowler sold the lot immediately next to it (lot number 19). Fowler ignored the letter and sold lots 9 and 19, which are the subject of this dispute, along with several others, to the defendant. Lots 9 and 19 were transferred by a quitclaim deed, while the other lots were transferred by warranty deeds.
Following the sale, the Fowler Farms residents took no immediate action; however, they sued Polhemus one year later when they learned of her plans to sell lots 9 and 19 to someone who announced an intention to build upon the property. This lawsuit had the effect of destroying the pending sale. The residents obtained both a T.R.O. and a preliminary injunction against the defendant; the injunction became permanent after a trial on the merits. In its judgment, the trial court granted to the plaintiffs an easement by implication across both lots 9 and 19. The defendant has appealed, and raises several issues, which we will address in turn.
The first issue relates to the trial court’s admission of testimony by one of the plaintiffs, Peggy Blalock, about alleged representations made to her by James Fowler (the original developer, now deceased) regarding access to the boat ramp; Blalock testified that James Fowler made those representations to her when she initially purchased her property. The trial court permitted this testimony. The defendant argues that the testimony should have been excluded by § 12-21-163, Ala.Code 1975, commonly known as the Dead Man’s Statute. Although we agree with the defendant that this testimony falls within the purview of the Dead Man’s Statute, we conclude that Polhemus waived any objection to it by failing to object to an earlier portion of Blalock’s testimony wherein the same subject matter was discussed, namely representations made by James Fowler at the time of Blalock’s purchase. In addition, a second plaintiff, Jean Gulledge, testified later in the trial as to representations by James Fowler, and Polhe-mus also failed to object to this testimony. An objection to the admission of certain testimony under the Dead Man’s Statute may be waived by a failure to object to other testimony wherein the same subject matter is discussed. Underwood v. Bank of Huntsville, 494 So.2d 619 n. 1 (Ala.1986); see Smith v. Haynes, 364 So.2d 1168, 1170 (Ala.1978); Akers v. Hamm, 446 So.2d 630, 631 (Ala.Civ.App.1984). Additionally, “[t]he rule is that overruling objections to questions already received without objection is not reversible error.” Coker v. Ryder Truck Lines, 287 Ala. 150, 155, 249 So.2d 810, 814 (1971).
The defendant next argues that there was insufficient evidence for the trial court to find an easement by implication across her property. We disagree. Easements by implication are recognized in Alabama, and, as this Court noted in Helms v. Tullis, 398 So.2d 253, 255-56 (Ala.1981):
“Easements created by implication cover a variety of types of easements. Creation by this method requires not only original unity of ownership, Brewer v. Avinger, 208 Ala. 411, 94 So. 590 (1922), but also that the use be open, visible, continuous, and *967 reasonably necessary to the estate granted. Birmingham Trust & Savings Co. v. Mason, 222 Ala. 38, 130 So. 559 (1930); Walker v. Clifford, 128 Ala. 67, 29 So. 588 (1901). The implication is that the parties implied such an easement because the grantee, having seen the use the grantor made of the property, can reasonably expect a continuance of [that] use. R. Powell, [Powell on Real Property (abr. ed. 19687)] ¶ 411.”
Based upon the facts before us, we find that there was sufficient evidence for the trial court’s declaration of an easement by implication. The subdivision was all originally owned by James Fowler, and the use of the boat ramp was open, visible, continuous, and reasonably necessary to the enjoyment of the property. The defendant herself testified that she had seen people using the boat ramp. The logical implication from these facts is that the parties implied such an easement, because Polhemus, having seen the use that William Fowler had made of the property, could reasonably expect a continuance of that use.
The plaintiffs cite Underwood v. Shepard, 521 So.2d 1314 (Ala.1988), as controlling authority in this matter, and we agree. In Underwood, a landowner sold several pieces of his lakeside property to various buyers and established a boat ramp nearby, which he permitted the buyers to use, noting the permitted use in some of the deeds to the various properties. A successor-in-interest to a buyer sought a declaration of an easement in regard to the ramp when a subsequent purchaser of the ramp property erected a fence across it. The plaintiffs in Underwood, like the plaintiffs here, argued that one of the main reasons they bought the property was the easy access to the lake, and they said that they would be forced to travel several miles to another ramp to launch their boats if access to the ramp was cut off.
This Court, in Underwood, reversed the trial court’s determination that there was no easement, noting that there was original unity of ownership, that the defendants had been aware of the ramp’s use, and that some, though not all, of the deeds contained clauses permitting the owners to use the ramp. Pol-hemus argues that Underwood should be distinguished on the grounds that the evidence of the easement’s creation in Underwood was undisputed, whereas there was disagreement here as to James Fowler’s representations to the subdivision residents. As noted above, the trial court heard evidence that James Fowler had agreed with the subdivision residents to provide the ramp for their use, and, although that evidence was disputed, we cannot conclude that the trial court’s findings of fact were plainly and palpably wrong.
Polhemus also contends that the Underwood agreement was written in some of the deeds, whereas in this case the agreement regarding the use of the boat ramp was oral. She argues that this oral agreement between James Fowler and the subdivision residents violates the Statute of Frauds (§ 8-9-2, Ala. Code 1975) and that when she purchased the lots in Fowler Farms she had no notice of the agreement and therefore holds a position similar to that of a “bona fide purchaser.”
It is true that there was no writing of any kind pertaining to the use of the boat ramp in this case. However, an unrecorded contract or agreement may create an easement that is binding upon successors-in-interest, when the easement is open and obvious and is itself sufficient to put any successors-in-interest on notice. Cleek v. Povia, 515 So.2d 1246, 1248 (Ala.1987). In addition, an easement may be created by oral contract where the contract has been relied upon and acted upon. Cleek v. Povia, 515 So.2d at 1248. See also Saucer v. Champion, 603 So.2d 950 (Ala.1992).
The record reveals testimony indicating that the subdivision residents used the road to the boat ramp; that they repaired that road; and that the defendant admitted that she had seen people using the boat ramp. Additionally, the record reveals that when the defendant purchased several parcels of land from William Fowler, she received warranty deeds for all the other parcels but received a quitclaim deed for the two lots next to the boat ramp. “It is well settled ... that one who has only a quitclaim deed to land cannot claim protection as a bona fide *968 purchaser without notice.” Gordon v. Ward, 221 Ala. 173, 174, 128 So. 217, 218 (1930).
Another issue raised by the defendant is whether the trial court erred in denying her motion for involuntary dismissal on the basis of the defense of laches. We find no error, noting that although the plaintiffs did not file suit immediately after William Fowler sold the property to the defendant, they had received no indication from the defendant that access to the boat ramp was in jeopardy. However, when the defendant, in turn, began negotiating to sell the property, the prospective purchaser informed a resident of the subdivision that he intended to build upon the property, It was at that point that the subdivision residents sued to prevent access to the boat ramp from being cut off. The fact that the residents waited until access to the boat ramp was actually threatened does not suggest laches to this Court.
For the reasons stated above, we conclude that the trial court did not err when it found an easement by implication across the defendant’s property. We remand the cause, however, because the trial court, in its order, merely declared that it found an easement, but did not specify its dimensions. On remand, the trial court should set out the exact scope of the easement in a manner that will least encumber the defendant’s property, but which will permit the plaintiffs reasonable use of the easement for the purposes for which it was created. The court shall make a return to this Court within 56 days, showing the action taken.
AFFIRMED IN PART AND REMANDED.
SHORES, KENNEDY, INGRAM and COOK, JJ., concur.